*Harlan & Craddock* for appellant. ˙˙

FRANKLIN FIRE
INSURANCE Co.
*vs*
HEWITT, ALLI-
SON & Co.

---

# Franklin Fire Insurance Company of Philadelphia *vs* Hewitt, Allison, & Co.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Equitable jurisdiction. Contract. Policy of Insurance.*

JUDGE MARSHALL delivered the opinion of the Court.·

CHANCERY.

Case 68.

*October 25.*

THIS bill was filed by Hewitt, Allison, & Co. to rectify a policy of insurance, averred to have been made out by mistake or fraud, in terms not embracing the subject intended, to recover for the loss, according to the agreement set up, independently of the policy. The contract of insurance was negociated on the part of the Insurance company, by Wm. S. Vernon, their agent in Louisville, who, upon receipt of the premium, delivered a receipt or certificate, dated on the 15th of April, 1840, and to the effect that he had "Received of Messrs. Hewitt, Allison, & Co. $55 premium for Fire Insurance, in the sum of $10,000, on their stock of merchandize, generally contained in their three story brick building, metal roof, situated on the south side of main street, between fifth and sixth streets, city of Louisville, Kentucky, and occu-

The case stated.

pied by them as a commission house," &c. The insurance to continue for one year from that date, at 12 o'clock meridian, on the terms and conditions of the policies issued by the Franklin Fire Insurance Company of Philadelphia. The certificate to be void on delivery of the policy. A few weeks after the date of the certificate, a policy was sent out by the company at Philadelphia, and delivered, as the certificate had been, to the chief Clerk of Hewitt, Allison, & Co. by whom also, the premium had been paid. The policy insures Hewitt, Allison, & Co. (according to the printed proposals and conditions annexed,) upon "their stock of merchandize generally contained in their new three story brick building, fire proof, situated on the south side of main street, between fifth and sixth streets, Louisville, Kentucky, occupied by them." One of the conditions annexed to the policy, was that "goods held in trust or on commission, are to be insured as such, which may be done by inserting the words, 'for account of whom it may concern,' otherwise the policy will not cover such property." On the 24th of November, 1840, a fire occurred by which the merchandize then contained in the building described in the policy, was consumed, to the value of $5179 84, of which all except goods to the value of $114 15, were the property of others held on consignment, and for sale by Hewitt, Allison, & Co. who then had in that building, merchandize to the value of $114 15, only. But they then had other goods, both of their own property and on consignment, in a contiguous building. And they had in their buildings at the time of the insurance, goods on consignment of the value of $10,000 or upwards, and also goods of their own not exceeding $5000, as stated by their Clerk, from an examination of the books, but exceeding $10,000 as proved by the agent and two other witnesses, to have been admitted by one of the firm after the fire. In what manner or proportion either class of these goods was distributed among the different buildings or warehouses, at the time of the insurance, does not appear. But it was proved by the Clerks, that they had advertised to do an exclusive commission business, and that their own goods were not expected to be long on hand.

The Insurance Company having refused to pay any part of the loss upon the goods held on consignment, and they not being embraced in the policy, Hewitt, Allison & Co. filed their bill alledging, among many facts, which are denied, the following, which is not denied, and which being moreover proved by the certificate, and referred to in it, may properly be considered in giving construction to it, viz: that in applying for the insurance, they informed the agent that they were commission merchants, doing business as such in their said building. It is also alledged, and not denied, that he knew that they had on hand, and were constantly receiving goods on consignment, on some of which they were making advances, and on others insurance was ordered by the consignors, and also that they applied to the agent for insurance on the stock of merchandize contained, &c; and it is expressly proved, that before the negociation for the insurance was complete, they told him they wanted insurance on the consigned goods, and but for them and the orders of their owners, they would not care about it. These circumstances clearly indicate the character and purpose of the application. They leave no room to doubt that insurance was desired, and must have been understood as being desired to cover consigned goods, and in our opinion, they afford a proper key to the true construction of the words "occupied by them as a commission house," which are introduced into the certificate. That the three last of these words were not deemed requisite for the identification of the building in which the goods were contained, is proved by the omission of them in the policy. For what purpose then were they inserted in the certificate? We answer, not merely to identify the building, but to show the character of the business done in it, and of the stock of merchandize contained in it, and thus to indicate the character and extent of the insurance intended to be effected. And this inference may be drawn from the face of the certificate itself, as it shows the principal facts referred to without other evidence. The word "*their*," used in the certificate as designating the stock to be insured, may in its strict sense, denote absolute property, and might, if it stood unqualified by other words or circumstances, confine the insur-

FRANKLIN FIRE INSURANCE CO.
*vs*
HEWITT, ALLISON & CO.

The object of the bill.

ance to the stock of which the insured were the actual owners. But it is also susceptible of another sense, and it is one in ordinary use, in which it denotes not absolute or general ownership, but the precise relation of special property, which subsists between a consignee, agent or bailee, and the goods of others which may be in his possession and under his control; and in this sense the possessive pronoun "his" or "their," is often used even in legal proceedings, in which proof of special property, or even of possession alone is deemed sufficient to sustain the title implied by the use of one of these words. Has a commission merchant, whose house is filled with goods of others, held on consignment, for sale by him, but who has no goods of his own, no stock? Most assuredly it is no misuse of terms, to say, that as commission merchant he has a stock, and that the goods held on consignment and commission constitute his stock. The absolute sense of the word "his" is plainly qualified by the character in which he holds the stock. The reference in the certificate to the manner in which the insured occupied the building, and to the business done therein, clearly shows that they had goods on commission in the building, and that such goods constituted the stock in the business referred to. These facts are sufficient to authorize the use of the word *"their,"* as applied to the relation in which the insured stood to the goods on commission. And as there was no necessity nor sufficient reason for referring to these facts in the certificate, but to show that the insured had goods on commission to which the word "their" was intended to be applied. And as, moreover, the reference by the insured to their character of commission merchants, in applying for insurance, plainly indicating their desire to be insured on goods held in that character, required a reference to such goods to be made in the certificate which was to contain the elements of the contract, we are of opinion, that the reference in the certificate to the character of the insured, and of the business done by them, in the building in which the goods to be insured were contained, should be understood as having been introduced for the purpose of indicating that goods belonging to the business referred to were to be insured, and of

thus qualifying the word *"their,"* and showing that it was applied to the goods held in the character and business referred to. This construction is not affected by the fact, that the insured had goods of their own at the time of the insurance—for it is not shown that the agent, before giving the certificate, knew that they had any other goods but those held on commission in either of the buildings, except by evidence which also proves that he was informed by the complainants that they wanted insurance to cover consigned goods, and that if they had none but their own, so confident were they in the security of their buildings that they would not insure at all. And as this information pointed out what was the principal object of the desired insurance, if this had not been sufficiently done before, so it made it his duty in making out evidence of the contract, to use language which would cover the intended subject, and is a reason for giving that effect to the language actually employed, if it can be reasonably done. If he did not know the fact, that there were other goods than those received and to be received on consignment, then also, as he must necessarily have known that goods on consignment were intended to be insured, the same duty resulted on his part, and it tends to the same construction of the certificate. And whether he knew or did not know that there were other goods, or from whatever source he may have derived his knowledge, as the terms and manner of the original application apprized him that insurance on goods held on consignment was desired, the same duty, and the same rule of construction followed his acceptance of the risk. There might indeed be a question, whether the application was such as to embrace both classes of goods, and whether the certificate should be construed as embracing both; or it might have been a question, if the agent had not known that there were other goods than those held on consignment, how far the withholding of that information might have affected the contract. But there being no question that the agent knew that there were consigned goods, and that insurance upon them was desired by the applicants, there can be no question that the certificate ought to have been expressive of a contract covering those goods. And

as it shows on its face that the complainants had and were expected to have, in the building descibed, goods held on consignment, which might constitute their stock of merchandize, and does not show that they had or expected to have any other goods there, the fair conclusion is, that those goods were intended to be embraced. Nor is the construction which we have given to the certificate repelled by the condition annexed to the policy, requiring goods held in trust or on commission to be insured as such, and containing a form of expression by which they may be included. The condition shows that goods held on commission may be insured by the consignee. But while it states one set of terms by which they may be insured, it does not prescribe those as the only terms to be used. It only requires that such terms shall be used as will indicate that the goods insured are held in trust or on commission. But if a commission merchant, having and expecting no goods but such as were and might be received on commission, should apply to an insurer, perfectly cognizant of these facts, for insusance on his stock in trade, or on his stock of merchandize contained, &c. and on paying the premium agreed on, should receive a a policy insuring him on "his stock of merchandize contained," &c. could it be that if his stock held on commission were consumed during the period named in the policy, the insurer could be borne out by this condition annexed, in saying that there was no insurance? Or would not the facts, and his knwoledge of them, and the certainty that goods on commission were the real subject of the contract, fix the policy upon the goods held on commission, though there was nothing in the instrument from which it could be said, without recurring to extrinsic facts, that goods on commission were insured? These ques-tions need no answer.

As the complainants had goods of both descriptions in their building at the time of the fire, and as the policy does not contain the words of the certificate, showing that the building was occupied by them "as a commission house," or any other words indicating the particular nature of the business then carried on, or to the character in which they held the goods therein contained, or any

of them, except the words *"their"* stock, &c. which if unqualified, might mean their own stock, it may be that the policy could not, in consequence of the condition annexed, be fixed upon the consigned goods or extended to include them. Whether if the policy had contained the omitted words which are contained in the certificate, it could, under the operation of the condition, have been fixed upon the consigned goods, either with or without the aid of extrinsic facts, would be a different question, as in that case, there would be enough in the policy itself to indicate that consigned goods were the subject of insurance. We are inclined to the opinion, that if this conclusion were rendered doubtful by the extrinsic fact, that the insured goods of their own, as well as those held on consignment, that doubt might be removed by the extrinsic facts accompanying the application, so as to fix the policy upon the consigned goods, without a violation of the condition.

But be this as it may, the certificate contains no such reference to the conditions annexed to the policy as would authorize them to be made a test of its meaning. It does indeed say, "This insurance to continue on the terms and conditions of the policies issued by the Franklin Fire Insurance Company." But this clause subjects the insurance itself, and not the construction of the certificate, to the conditions of the policies. And as the certificate, according to a rational interpretation of its terms, shows that consigned goods were insured, and as they were known and represented to be such when the insurance was effected by accepting the proposal, and receiving the premium, it follows that they must have been in fact insured as such, although they were not specifically named as such in any written evidence of the contract. And whatever degree of particlarity might be required in the policy itself, it is sufficient that the certificate indicates, with reasonable certainty and without any ambiguity on its face, that the insurance was in fact made upon goods which the agent knew were held and expected to be received on commission.

But the certificate, though it evidences a contract which the defendants are bound to comply with, by furnishing a policy, covering the subject which it indicates as having

FRANKLIN FIRE INSURANCE CO.
*vs*
HEWITT, ALLISON & CO.

Where insurers contract to deliver a policy covering a specific property, and a

FRANKLIN FIRE
INSURANCE CO.
*vs*
HEWITT, ALLI-
SON & CO.

policy be deliver-
ed, though not
formally accept-
ed, variant from
the contract, and
loss occur with-
in the insurance
contracted for, a
Court of Equity
will grant relief
to the insured,
according to the
contract agreed
on.

been insured, or by furnishing the indemnity which the insurance implies, is enforcible against them in Chancery only, (*per Woodworth*, 4 *Cowen*, 661,) it does not profess to be a contract in their names, and is not so executed. If then they had delivered no policy, as according to the import of their agent's acts they were bound to do, the insured would have remedy against them in a Court of Equity, perhaps for coercing the execution of a policy before a loss, and certainly for enforcing the indemnity implied in the insurance upon the occurrence of a loss by fire within the period fixed by the terms of the agreement. And the only remaining question in this case is, whether by reason of the delivery to their clerk of a policy materially varient in its effect from the original contract, as evidenced by the certificate, and by their failure to object to it until after the loss had occurred, they are precluded from claiming the benefit of the original contract? We think they are not precluded for the following reasons :

They alledge in their bill that they had not seen the policy and did not know of it until after the fire occurred which occasioned the loss. And this is proved as fully as a negative can be, by the clerk to whom the policy was delivered, who says he immediately locked it up with other valuable papers in a repository of which he always kept the key; that he would have known if the complainants or any of them had taken it out; and that he does not believe that any of them ever saw it; and he did not himself examine it. If, as may be assumed, they never saw it, there could have been no such acceptance of it by them as would prove that they had waived the original contract, or taken this policy as a consummation of it. And although their neglect to inquire whether it had been delivered, or to examine it, if they knew of its delivery, shows a high and culpable degree of carelessness, we think it would be visiting upon them too heavy a penalty for this neglect, to say that by that alone they had forfeited the indemnity for which they had paid the stipulated price, and especially as they still held the certificate which bore evidence of the contract, and as they had no reason to anticipate a variance from it in any policy which had been or might be furnished, and as it is more-

over by no means certain, nor even very probable, that had they inspected the policy they would have at once detected the variance, or become aware of its importance until they had demanded payment upon it.

If the original contract of insurance had embraced the consigned goods only, and the policy had embraced only the proper goods of the insured, and both of these facts had been known and understood by the complainants, and they had permitted the policy to lay by them for months or even weeks without objection, they certainly could not have been allowed, after a loss, falling almost entirely upon the consigned goods, to reject the policy and stand by the original contract. And if such had been the obvious import of the two instruments, they might not have been allowed, on the ground of ignorance, and certainly not on the ground of negligence to exercise so dangerous a privilege. But although the original contract and the certificate include goods on consignment, to show which has been the chief object of what has been said on the subject, we are of opinion that both classes of goods were embraced. The complainants had, at the time of applying for insurance, goods of both classes, as was known to the agent to whom the application was made, and as, in fact, was communicated to him at the time. They applied to insure *the* stock of merchandize contained in their buildings, which would include the whole stock, as well of their own goods as of those on commission; and so would the word 'our,' if they had used it as they probably did, in reference to the stock; and so does the word 'their,' which is used in reference to it in the certificate—and it is not proved that they applied for insurance exclusively on consigned goods. The complainants therefore were not in such a condition that their election between the two contracts might have been affected by the proportion of the loss which should fall on one or other class of goods. But as both classes were protected by the original contract, to the value of $10,000, and it does not appear that goods exceeding that value were at any time in the building described, and as one class only was protected by the policy, it may be assumed that they would at any time, whenever apprised of the difference,

FRANKLIN FIRE INSURANCE CO.

*vs*

HEWITT, ALLISON & CO.

Tho' the insured might be concluded by the acceptance, knowingly, of a policy made out varient from contract—yet if it appears that it was rec'd by the clerk and its terms not known until the loss occur, an acceptance will not be inferred nor *he* concluded thereby.

have rejected the policy or required its reformation. And the question is not whether they shall be allowed, after the loss has fallen, to make an election which they might not have made before, and thus to throw a heavy loss on the insurers, which, if the election had been made before the event, might not have fallen on them; but whether the complainants have, by their mere delay in examining a policy which they would undoubtedly have rejected as soon as they understood it, lost the advantage of their actual contract, and whether the insurers shall, by that delay, which can be attributed to no sinister motive, be saved from a loss of $5,000, which, under their original contract, they were liable to sustain, and which they would have been bound to sustain under the policy, if, as was their duty, they had framed it so as to effectuate the object of the actual insurance. This question we have already answered in favor of the complainants.

In the view of the case which we have taken we have not deemed it material to inquire whether the variance in the policy from the certificate was not occasioned by fraud, accident, or carelessness. We think the policy, as made out, is not such an instrument as the defendants were bound to make in consummation of the contract of their agent; that the delivery of the policy, as made, did not discharge them from their obligation to comply with that contract; and that the complainants are not precluded by their own acts or conduct from the benefit of that obligation, but may enforce it in equity, and are therefore entitled to a decree for the full value of the goods consumed in the building mentioned in the certificate, as well of those held on consignment as of those which were their own peculiar property.

Nor have we deemed it necessary to discuss the parol evidence, going to elucidate the question as to the term and extent of the application for insurance. We have given some effect to certain unanswered allegations of the bill on that subject because, although the facts were not originally within the knowledge of the defendants themselves, they were within the knowledge of their agent. And not only is his knowledge of facts materially affecting the transaction to be attributed to them, but it may be

assumed, from the nature of the denials contained in the answer, all of which, so far as they relate to the original transaction, are expressly based upon information that they were in fact founded on information given by the agent after inspecting the bill and for the purpose of enabling them to answer it, if indeed the answer was not, as it probably was, drawn up by him or under his dictation, and sent on to the Company at Philadelphia to be authenticated by their seal and the proper signatures, from which facts and considerations a presumption arises that the undenied allegations are true. And we may now add that this presumption, as to the most material of these allegations, is not only corroborated by the tenor of the certificate, but also by the testimony of three witnesses, of whom two depose directly to the fact that in the course of the negotiation for the insurance and in reference to it, and before it was agreed on, though after the first application, which was verbal only, had been made, the complainants communicated to the agent expressly, not only their desire to insure the consigned goods and their reasons for it, but also told him that this constituted their principal or only motive for effecting insurance at all. The agent, it is true, says in his deposition that he does not recollect this communication, and gives as a reason why he may have paid no attention to it if it occurred, that he was then examining the building with a view of fixing the premium, and that the subject of insurance having been, as he supposed, fixed by the first application, he considered the subsequent communication of the complainants as being intended to affect the rate of premium by commending the security of their building which, being usual in such cases, he disregarded. But although the immediate objects of the communication may have been to affect the rate of insurance, it also demonstrated most unequivocally that the complainants desired to insure, and thought they were insuring the consigned goods. The agent had no right to disregard such a communication. And as he must have heard it, it did in fact convey to him information in a form equally solemn as that in which the original application was made as to the real intention of the complainants in making it, and their real

CAMPBELL *et al.*  understanding of its import.   If he understood the mat-
*vs*
WEST *et al.*  ter differently, surely it was his duty to let them know
that they were mistaken in supposing that they had ap-
plied for insurance on consigned goods, and were negoti-
ating for such an insurance.   As he did not do so we can
but consider this communication, if not itself equivalent
to the first application, as at least tending most strongly to
show what it was and how it was understood.   And as it
thus harmonizes with the inferences deducible from the
failure to answer the allegations above noticed, and also
from the tenor of the certificate, we regard the conclusion
that the insurance was intended and understood to em-
brace the consigned goods, as too well established·to be
affected by the agent's present want of recollection, or by
his denials of any express  understanding that insurance
was desired on  such goods, or by  his  assertion, faintly
expressed, that the  complainants applied to insure their
own goods, and which was probably founded rather upon
his construction of the  certificate, than upon  any vivid
recollection of the facts as they occurred.

Wherefore the decree is affirmed.

*Guthrie and Nicholas* for plaintiffs: *Duncan* for defen-
dants.